UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

HANRI KHODABAKHSH,

Petitioner,

v.

BRIAN ENGLISH,

Respondent.

CAUSE NO. 3:26cv161 DRL-SJF

OPINION AND ORDER

Immigration detainee Hanri Khodabakhsh filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Khodabakhsh filed a reply. The petition is ready to be decided.

Mr. Khodabakhsh is an Iranian citizen who entered the United States in 1999. In 2001, he was convicted of aggravated kidnapping and aggravated criminal sexual abuse in Illinois and sentenced to ten years in prison. On November 13, 2002, an immigration judge ordered him removed. On October 22, 2012, United States Immigration and Customs Enforcement (ICE) released Mr. Khodabakhsh on an order of supervision. He remained on release in this country for nearly 13 years. On September 17, 2025, ICE detained him, and he is currently at the Miami Correctional Facility.

On April 3, 2026, the respondent represented that the government intended to remove Mr. Khodabakhsh to Iran but that it was unlikely that he would be removed within the next 30 days. On April 13, 2026, an ICE official attested that the Chicago Field Office

continues to work with the Headquarters Removal Management Division to obtain travel documents from Iran. She further reports that currently "the airspace over Iran is closed which has paused removals to Iran" and that "[r]emovals will resume once the airspace reopens."

The respondent first argues that the court lacks subject matter jurisdiction over Mr. Khodabakhsh's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Khodabakhsh ended about 14 years ago. *See* 8 U.S.C. §§ 231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6). Given his criminal conviction,

2

Mr. Khodabakhsh's detention years ago was authorized by § 1231(a)(6). The Warden likewise relies on this same statute as the basis for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. Indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure

removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments" — such as the status of repatriation negotiations — are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667

4

F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[1] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Because Mr. Khodabakhsh has been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable. To start, the respondent identifies Iran as the only country under consideration for removal. In 2012, the government released Mr. Khodabakhsh on an order of supervision without removing him to Iran. He represents that Iran has not responded to his requests for travel documents. His most recent term of detention now spans eight months with no indication of any efforts by the government to obtain travel documents from Iran. The court is also aware of the recent military conflict

---

[1] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

between the United States and Iran and the present uncertainty of a resolution, which reasonably impedes any removal to Iran for the foreseeable future. The court finds that Mr. Khodabakhsh met his preliminary burden of showing good reason to believe that there is no significant likelihood of his removal to Iran in the reasonably foreseeable future.

To rebut this showing, the respondent represents that the government is currently working to obtain travel documents from Iran and that it has paused removals to Iran in light of the closure of the airspace over Iran. These attestations don't demonstrate that Mr. Khodabakhsh's removal is likely to occur in the reasonably foreseeable future. Notably, the precise relationship between the efforts to remove Mr. Khodabakhsh and the closure of Iran's airspace is unclear. The court understands that closed airspace would delay efforts to transport individuals subject to removal to Iran, but it is less clear how closed airspace would hinder efforts to obtain travel documents. It may be the case that the broader conflict is affecting efforts to obtain travel documents, but the court cannot find that the conflict will end in the reasonably foreseeable future. *See Ighani v. Kimbrough*, 2026 WL 1178603, 2 (W.D. La. Apr. 14, 2026) ("The Government thus cannot foreseeably execute removal orders to any such country, particularly given the ongoing and uncertain scope and course of the war in and around Iran."); *Minassi, v. Noem*, 2026 WL 923289, 5 (C.D. Cal. Apr. 1, 2026) ("Consequently, the Court has been given no reason to believe that removal to Iran is still a possibility given the ongoing war."). Some armed conflicts, despite best efforts at overtures of peace or resolution, can last years and sometimes more than a decade. Though there appear to be ongoing peace negotiations with Iran, reports remain mixed on what seems to be a daily basis, and the court has no insight into if or when an agreement allowing removals

to continue might be reached. More important, the government has presented no such insight, so has not met its burden today.

What's more, the explanation does not explain why efforts to remove Mr. Khodabakhsh will be successful now when the government has not removed him since the order of removal became final in 2012, and when Iran has not responded to any of Mr. Khodabakhsh's request for travel documents. It does not explain why travel documents have not yet been obtained after eight months of detention, five of which predate the current conflict with Iran. It does not suggest that the government has submitted a formal request for travel documents, nor does it suggest that the government is in the process of preparing a formal request or any basis for the delay in submitting such a request. It does not provide any information as to when Iran might reach a decision once a formal request has been submitted or the likelihood that Iran will issue travel documents. In short, the Warden has not shown a likelihood of Mr. Khodabakhsh's removal in the reasonably foreseeable future. Therefore, the Warden must release Mr. Khodabakhsh under *Zadvydas*. Efforts to remove him may continue while he returns to supervision, on the same conditions as his last release.

For these reasons, the court:

(1) GRANTS the petition for writ of habeas corpus [1] and ORDERS the respondent to release Hanri Khodabakhsh on the same conditions of supervised release that existed before his re-detention and to certify compliance with this order by filing a notice with the court by **May 26, 2026**; and

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release.

SO ORDERED.

May 22, 2026                                          *s/ Damon R. Leichty*
                                                     Judge, United States District Court